UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAUN ABIDI,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 3:20-cv-05212-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of his application for Supplemental Security Income. He contends the ALJ erred by (**1**) discounting his pain and symptom testimony; (**2**) misevaluating the medical evidence; and (**3**) discounting lay witness testimony. Dkt. 10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 39 years old, attended high school through twelfth grade, and stated that he injured his back while working as an airport baggage handler in 2004. Tr. 67. Plaintiff's previous application for SSI was denied in September 2013. Tr. 146–159. In December 2015, he filed his current application for SSI, alleging disability as of December 18, 2015. Tr. 273. Because plaintiff had moved to Minnesota and back, plaintiff's hearing took place in January 2019 and the ALJ's decision was issued in February 2019. Tr. 19–28, 62.

The ALJ determined that plaintiff had the severe impairments of degenerative disc disease and congenital elbow deformity. Tr. 21. The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work except no ladders, ropes, or scaffolds; no kneeling, crouching, or crawling; occasional stooping, climbing ramps and stairs; frequently reaching and handling; and avoiding concentrated exposure to workplace hazards. Tr. 22. The ALJ found that plaintiff had no past relevant work. Tr. 26. The ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform and therefore concluded that plaintiff is not disabled. Tr. 26–27. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–4.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff contends that the ALJ harmfully erred by misevaluating plaintiff's testimony, the medical record, and lay testimony by plaintiff's father and a neighbor. He fails, however, to demonstrate that the ALJ's interpretation of the testimony and evidence was unreasonable. The Court finds that the ALJ's decision was supported by substantial evidence and was free of harmful legal error.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 2

### 1. Plaintiff's Testimony About Pain and Other Limitations

Plaintiff argues that the ALJ failed to give specific, clear, and convincing reasons for discounting his allegations of debilitating back pain. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The Court disagrees.

The ALJ discounted plaintiff's allegations that his back pain rendered him bedridden for several years, limited his ability to travel or go outside of his home, and had worsened since the September 2013 decision finding him not disabled.[1] Tr. 22–26. First, the ALJ found that the severity and worsening of plaintiff's pain over the years was inconsistent with the medical evidence. Tr. 22–23. In July 2015, treating medical provider Andrea M. Strid, ARNP, noted that plaintiff would benefit from continued physical therapy due to improvement from needing a walker to being able to walk, noted an exaggerated pain response to palpation, and suspected a psychosomatic component. Tr. 519–20. In August 2015, treating, specialist physician Craig D. McNabb, MD, commented that plaintiff's "self-imposed bed rest" contributed to his deconditioning, noted that plaintiff was "very short" in his descriptions of how the pain is made better or worse with particular activities, opined against surgery, and suggested that although physical therapy might help, cognitive behavioral rehabilitation could help plaintiff to respond to

---

[1] At a January 2016 medical examination, plaintiff reported that his back pain "began about 3 years ago" with "a rather sudden onset" after a sudden change in position, notwithstanding his hearing testimony that his back pain began around 2004 while working as an airport baggage handler. Tr. 419; *see* Tr. 68. In a 2017 physical examination, plaintiff stated that "he may have first injured it while doing a physical job as luggage handler at an airport years ago," then in 2013 he felt intense pain when trying to straighten up. Tr. 432. During prior proceedings, plaintiff reported at a June 2006 emergency room visit that he had a nine-month history of back pain from having lifted a bag while working as an airport baggage handler Tr. 152. In September 2013, the prior ALJ found plaintiff to be minimally credible when describing his symptoms because "[r]ecords show the claimant engages in extreme pain behavior, including crawling on exam tables, crawling on the floor, lying on exam floors, constant groans and moans, and refusing to perform physical testing on exam." Tr. 157.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 3

1  back pain with more than just avoidance. Tr. 524–25. Similarly, treating orthopedic spine
2  specialist George Oji, MD, noted "[o]verall a normal looking spine except for a nondisplaced left
3  L5 pars defect which may or may not be causing his low back pain"; observed that his back
4  looked stable and the most recent MRI had shown no changes since the 2014 MRI; opined
5  against surgery given plaintiff's age, benign findings on the MRI, and questionable prognosis
6  from surgery for chronic low back pain; discussed conservative treatment options like core
7  strengthening and stretching, physical therapy, acupuncture, chiropractic manipulations, a brace,
8  and nutrition; and recommended that "[t]he best thing in my opinion is to break the
9  pain/inactivity cycle and get back into a routine exercise program followed by starting a hobby,
10 job, or education to get him active again since he is currently staying at home with his parents
11 without any routines." Tr. 515–16. In appointments with healthcare providers, plaintiff was
12 rarely observed to be in distress or to exhibit pain behavior and was not observed to have
13 persistent weakness in the extremities or signs of atrophy in the muscles. *See, e.g.*, Tr. 385–86,
14 392, 409–10, 414, 420, 422–234, 435, 440, 444, 463, 467, 480, 486, 495, 519–20.
15       Plaintiff argues that inconsistency with the medical evidence was not a sufficiently clear
16 and convincing reason to discount plaintiff's pain testimony because certain medical providers
17 noted his difficulty with walking, reduced strength, and severe deconditioning, and plaintiff's
18 physical therapist opined more severe limitations than those found in the ALJ's RFC assessment.
19 While plaintiff offers a plausible interpretation of the evidence, he does not undermine the ALJ's
20 reasonable reconciliation of conflicting observations. "An ALJ cannot be required to believe
21 every allegation of disabling pain, or else disability benefits would be available for the asking, a
22 result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.
23 2007). It was not unreasonable, for example, for the ALJ to infer that plaintiff's deconditioning

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 4

appeared to be a result of his self-imposed bed rest given that Dr. McNabb opined as such and suggested that cognitive behavioral therapy might alleviate his symptoms, and Dr. Oji recommended more activity and starting to work as a solution. Similarly, the sporadic and differing reports of plaintiff's pain severity and strength level appear to support the assessed RFC at least as much as they do plaintiff's position, if not more.

Second, the ALJ found that plaintiff's assertion of debilitating back pain was undermined by routine and conservative treatment, as well as indications of at least a partial response to treatment. Tr. 23. In July 2016, five months after plaintiff had moved to Minnesota, physician Katherine L. Anglin, MD, of the Physicians Neck and Back Center ("PNBC") evaluated plaintiff for his chronic low back pain. Tr. 405. At the time, plaintiff reported taking no prescription medication and was managing his pain with over-the-counter naproxen and ibuprofen. Tr. 403. Dr. Anglin noted that plaintiff initially stated that he had received no medical evaluations while in Minnesota because he was too far away from a clinic, then recanted and said that he had actually visited the local clinic and had engaged in physical therapy that did not help. Tr. 405. Dr. Anglin opined that plaintiff would not be "physically able to enroll in the aggressive core spinal strengthening that we have here at PNBC," but "recommended that he establish care at a clinic and do more regular PT as a start." *Id.* Plaintiff did not, however, follow up with physical therapy from September 2016 to September 2017, reporting on September 14, 2016 that he would be unable to pay for physical therapy once he had exhausted the maximum visits allowed by his medical insurance. Tr. 23, 408. The ALJ found this treatment gap to be inconsistent with plaintiff's claimed severity of pain, and that plaintiff had not adequately explained it by referring to an inability to pay because were his pain as extreme and limiting as alleged, plaintiff would have either sought government subsidized insurance or community resources for the indigent, or

1    utilized hospital emergency rooms. Tr. 23. Moreover, once plaintiff reestablished care from

2    September 2017 onward, he continued to receive conservative treatment with some improvement

3    and to exhibit limitations less severe than alleged: medical providers recommended physical

4    therapy; he reported that prescribed Tramadol helped to relieve his pain for 3 to 4 hours; he

5    reported being able to stand for 2 to 3 hours before needing to lie down; and he described his

6    back pain of 5 out of 10 and symptoms as intermittent and "sometimes good sometimes bad." Tr.

7    427–37, 439–40, 443, 447, 449–54, 498–514.

8        Plaintiff argues that his routine and conservative treatment does not constitute a clear and

9    convincing reason for discounting his pain testimony. Although plaintiff attempts to characterize

10   the use of Tramadol and over-the-counter painkillers, as well as a prescription for physical

11   therapy, as "the most aggressive treatment that his symptoms allowed, given the nature of his

12   impairments," Dkt. 10, at 5, this does not undermine the reasonable inference that every medical

13   provider presumed the best way to address plaintiff's pain was through, at most, the use of

14   Tramadol to good effect and increased activity levels. Plaintiff also argues that the ALJ

15   inappropriately discounted plaintiff's pain testimony based on the gap in treatment between

16   September 2016 and September 2017 because the ALJ had failed to fully investigate what

17   plaintiff's alternatives to treatment would have been if he could not pay for medical services.

18   Dkt. 10, at 6 (citing Tr. 23). While it would, of course, be inappropriate for the ALJ to have

19   discounted plaintiff's pain testimony based entirely on plaintiff's inability to pay for treatment

20   between September 2016 and September 2017, plaintiff has presented no evidence that his pain

21   was worse during this period, or could not be adequately discounted for other already stated

22   reasons. Any reliance by the ALJ on plaintiff's inability to pay during this period was at most

23   harmless error. It was not unreasonable for the ALJ to presume that plaintiff—long adept at

seeking medical treatment, physical therapy, and emergency care despite having no employment income for over a decade—would be able to access some form of medical treatment if his extreme pain from September 2016 to September 2017 had justified it. In fact, on September 19, 2016, social worker Michelle Engels, LCW, noted that plaintiff currently had insurance through Minnesota Medical Assistance Blue Cross/Blue Shield and, as such, plaintiff qualified for transportation assistance to enable him to attend physical therapy more than once a week. Tr. 407. Moreover, although the ALJ noted that plaintiff had told a medical provider on September 14, 2016, that he would be unable to pay for physical therapy beyond a certain number of appointments, Tr. 23 (citing Tr. 408), plaintiff does not here or elsewhere in the record affirmatively state that he did not have medical insurance between September 2016 to September 2017. The only reference to an inability to pay occurs in regard to plaintiff having concerns about *exhausting* the maximum number of physical therapy visits that medical insurance would pay for—circumstances that were never confirmed by his medical insurer or by anyone else. Tr. 408.

Third, the ALJ found that plaintiff's activities of daily living evinced fewer limitations than the extreme limitations to which he attested. Tr. 24–25. Although plaintiff denied doing housework, driving, and shopping in stores, lay testimony referred to plaintiff walking to a nearby Walmart and a convenience store; plaintiff used the bus and even reported riding the bus for a "full day"; a social worker in 2018 mentioned that plaintiff was getting out of his house more; plaintiff told his physical therapist that he was able to drive; plaintiff did some chores involving very light objects, did light shopping, and attended to his personal self-care. Tr. 304–11, 362, 484, 508, 530.

Plaintiff argues that inconsistency with activities of daily living does not constitute a clear and convincing reason for discounting his pain testimony because his reports of being able to stand for 2 to 3 hours does not indicate an ability to perform light work, and the reports of plaintiff's ability to walk to neighboring stores, drive, and take the bus should be viewed as minimal activities consistent with his pain testimony. Again, although plaintiff raises a plausible interpretation, he does not undermine ALJ's determination that his daily activities undermined his testimony that pain rendered him unable to leave his bed or to perform such activities. Plaintiff's other arguments fail for the same reason. Dkt. 10, at 7–9. Plaintiff contends that there was no conflict between testifying that his disabling pain kept him bedridden and reports of having intermittent, and moderate back pain and with being deconditioned with no signs of muscle atrophy. Dkt. 10, at 7–8. Contrary to plaintiff's assertion, the ALJ has not acted as a physician by determining that plaintiff's lack of atrophy suggested greater functionality than alleged when viewed through the lens of medical reports of full 5/5 strength and an orthopedic recommendation that increased activity, including work, would help to alleviate his symptoms. Tr. 23; *see, e.g.*, Tr. 516, 524. Plaintiff also contends that plaintiff's partial response to pain management was not substantial evidence that could be used to discount his pain testimony. Dkt. 10, at 8–10. Contrary to this assertion and as discussed earlier, the ALJ examined plaintiff's long history of using only over-the-counter pain medication plus his limited, but effective, use of Tramadol, and reasonably inferred that such conservative pain management measures suggested less severe pain symptoms than alleged.

Plaintiff has failed to demonstrate why it was unreasonable for the ALJ to have discounted plaintiff's testimony for the specific, clear, and convincing reasons that the symptom testimony was inconsistent with the medical evidence, conservative and sporadic treatment, and

his daily activities. Although plaintiff offers a plausible, alternate interpretation of the evidence, he fails to undermine the ALJ's reasonable inferences and conclusions.

### 2. Medical Evidence

Plaintiff argues that the ALJ harmfully erred by giving significant weight to the June 2016 reviewing opinion of M. Ruiz, MD, and the October 2016 reviewing opinion of Cliff M. Phibbs, MD, by discounting the opinion of treating nurse practitioner Connie Liu, ARNP, and by discounting the opinion of treating physical therapist Daniel Hughes, DPT, that was adopted by treating physician Francisco Chan, MD. The Court disagrees.

#### a. Reviewing Physicians Dr. Ruiz and Dr. Phibbs

Plaintiff contends that the ALJ harmfully erred by giving significant weight to the opinions of reviewing physicians Drs. Ruiz and Phibbs. The Court disagrees.

Drs. Ruiz and Phibbs opined that plaintiff was capable of working at the light exertional level, with non-exertional postural and environmental restrictions. Tr. 124–26, 137–39. The ALJ gave the reviewing opinions of Drs. Ruiz and Phibbs significant weight because they were "mostly consistent with the weak objective evidence of the claimant's spinal disorder, and the routine and conservative course of treatment for back pain." Tr. 25. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). The Court finds that the ALJ based the non-disability determination on much more than the reviewing opinions of Drs. Ruiz and Phibbs. The ALJ discounted plaintiff's pain testimony as inconsistent with the evidence and evaluated the conflicts in the medical record regarding the severity of plaintiff's pain symptoms. Tr. 23–26.

Plaintiff argues nonetheless that the opinions of Drs. Ruiz and Phibbs do not warrant being afforded significant weight because the reviewing physicians did not provide adequate explanations for their conclusions since they explicitly summarized only four treatment notes and did not examine contradictory evidence that post-dated their review. Dkt. 10, at 13–14 (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)). This argument is unpersuasive. Although Drs. Ruiz and Phibbs explicitly summarized only four treatment records, the evidence they received was more voluminous and the summarized treatment records referred to such things as a 2014 MRI that showed no significant changes to account for pain, a back that appeared strong, and 5/5 motor strength. *See, e.g.*, Tr. 118–20, 122. Moreover, though the 2016 reviewing opinions necessarily did not refer to evidence post-dating the review, the post-2016 evidence does not preclude the conclusions reached by Drs. Ruiz and Phibbs. *See, e.g.*, Tr. 496 (back specialist in August 2018 opining against surgery, recommending conservative management, and noting no back tenderness, normal gait, and intact strength of major muscle groups on both legs).

The ALJ did not harmfully err by giving significant weight to the reviewing opinions of Drs. Ruiz and Phibbs.

### b. Nurse Practitioner Ms. Liu

Plaintiff argues that the ALJ did not provide a germane reason for discounting the opinion of Nurse Practitioner Ms. Liu.[2] *See Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). The Court disagrees.

---

[2] Plaintiff erroneously refers to Ms. Liu as "Dr. Liu" in the discussion of Ms. Liu's opinion. *See* Dkt. 10, at 14–15.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10

The ALJ discounted Ms. Liu's opinion as inconsistent with the weak objective evidence of plaintiff's spinal disorders, the routine and conservative treatment for back pain, the partial response to medication and physical therapy, the limited observations of pain behavior, the observations of normal muscle strength and tone, the observations of normal gait by some providers, and plaintiff's report of being able to stand 2 to 3 hours at a time. Tr. 25. These were germane reasons for discounting Ms. Liu's opinion.

The Court finds that the ALJ did not harmfully err by discounting Nurse Practitioner Ms. Liu's opinion.

### c. Treating Physical Therapist Mr. Hughes and Treating Physician Dr. Chan

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of treating physical therapist Mr. Hughes, as well as the opinion of treating physician Dr. Chan, who adopted the limitations assessed by Mr. Hughes as his own.[3] *Molina v. Astrue*, 647 F.3d 1104, 1111 (9th Cir. 2012). The Court disagrees.

The ALJ gave little weight to the opinions of Mr. Hughes and Dr. Chan. Tr. 25. In November 2018, Mr. Hughes reported that plaintiff could sit for three hours, stand for one hour, walk 1.5 hours, needed to alternate positions, could lift no weight from floor to waist, could lift three pounds from waist to overhead frequently, could carry five pounds for 50 feet frequently, and could carry 10 pounds for 50 feet occasionally. Tr. 527–28. Mr. Hughes also noted that

---

[3] Although Mr. Hughes is a doctor of physical therapy, the regulations recognize only medical or osteopathic physicians as "acceptable medical sources." 20 C.F.R. § 404.1502. The Court nonetheless acknowledges his expertise and authority as a treating medical source. The Court examines whether the ALJ discounted Mr. Hughes's opinion for specific and legitimate reasons rather than for germane reasons because it was adopted by treating physician Dr. Chan and because "specific and legitimate" constitutes the more rigorous standard. If the ALJ articulated specific and legitimate reasons, then those reasons were also germane.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 11

plaintiff was slow at activities and could not work at a production-rate pace. Tr. 529. In December 2018, Dr. Chan wrote a single-sentence opinion: "I agree with the physical capacity assessment that was done by Physical Therapy Northwest which was done November 14, 2018." Tr. 533. Dr. Chan also wrote an earlier, three-sentence letter opinion in May 2018: "Patient is undergoing medical treatment. He has been diagnosed with chronic back pain. He has been unable to work because of this condition since 2010." Tr. 475 (carriage returns omitted).

The ALJ properly discounted Dr. Chan's May 2018 opinion because Dr. Chan's conclusory remark regarding disability was an issue reserved for the Commissioner and because Dr. Chan did not treat plaintiff in 2010 and therefore had no basis for his opinion. Tr. 25. Whether the ALJ also properly discounted Dr. Chan's December 2018 opinion rests entirely upon whether the ALJ properly discounted Mr. Hughes's November 2017 opinion. The ALJ found that Mr. Hughes's opinion was "somewhat internally inconsistent" because an individual who could carry 10 pounds occasionally would be able to lift more than three pounds. Tr. 25. The Court agrees with plaintiff that this was not a specific and legitimate reason to discount Dr. Hughes's opinion because it is not inconsistent to opine that a person who could lift only three pounds *from waist to overhead* could carry 10 pounds occasionally. *See* Tr. 528. This constituted harmless error, however, because the ALJ stated other specific and legitimate reasons for discounting Mr. Hughes's functional assessment: it was inconsistent with the weak objective evidence of plaintiff's spinal disorders, the routine and conservative course of treatment for back pain, the partial response to medication and physical therapy, the limited observations of pain behavior, the observations of normal muscle strength and tone, the observations of normal gait by some providers, and plaintiff's report of being able to stand 2 to 3 hours at a time. Tr. 26.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 12

The Court finds that the ALJ did not harmfully err by discounting the opinions of Mr. Hughes and Dr. Chan.

**3. Lay Testimony**

Plaintiff contends that the ALJ failed to give specific reasons germane to each witness for discounting lay testimony by plaintiff's neighbor and plaintiff's father. *See Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir. 2009). The Court disagrees.

The Court agrees with plaintiff that the ALJ could not reject the lay testimony because, but its very nature, lay testimony does not come from neutral medical sources. Tr. 26. This error was, however, harmless because the ALJ cited other specific reasons germane to each witness for giving the lay testimony little weight: inconsistency with the weak objective evidence of plaintiff's spinal disorders, the routine and conservative course of treatment for back pain, the partial response to medication and physical therapy, the limited observations of pain behavior, the observations of normal muscle strength and tone, the observations of normal gait by some providers, and the claimant's report of being able to stand 2 to 3 hours at a time. *Id.* Moreover, the ALJ noted that plaintiff's own statement to his physical therapist that he sometimes drove conflicted with his father's statement that plaintiff could not drive, and the neighbor's reference to plaintiff's ability to shop appeared to be consistent with other evidence, such as plaintiff's statement to his physical therapist that he did light shopping to get out of the house. Tr. 26; *compare* Tr. 562–63 (neighbor's testimony) *and* Tr. 371–72 (father's testimony) *with* Tr. 530 (physical therapist Mr. Hughes's November 2018 opinion).

The Court finds that the ALJ did not harmfully err by discounting the lay testimony by plaintiff's neighbor and plaintiff's father.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 26th day of October, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge